The next case is Tranchina v. McGrath. Thank you, Your Honor. May it please the court, James P. Blank on behalf of Defendant Justin McGrath. This appeal arises from a 1983 trial that resulted in a verdict for the plaintiff. In the underlying allegation made by a prisoner at Bear Hill Correctional Facility, he alleged that evidence had been planted on him by the defendant, resulting in an unjustified use of force by the defendant, and subsequent attacks by other members, other corrections officers at Bear Hill Correctional Facility. Mr. McGrath contended, in contrast, that Mr. Tranchina was the subject of a random path risk, at which time Mr. McGrath discovered a plexiglass shank in the sock of Plaintiff Tranchina. There was only two witnesses to this relevant interaction until backup was called, at which point there was nothing to be sussed out between whether the plexiglass was planted there, or whether it actually had arisen from Mr. Tranchina's sock. In this appeal, we contend, we make four arguments. First, we think that given the series of different defendants involved in this action, and the jury's verdict relieving co-defendant Barnaby of any liability, and the plaintiff's failure to name the subsequent plaintiffs, whether it's John Doe or specifically his identified plaintiffs, who supposedly tossed him around and threw him into the back of a van, kicked him in the face, that combined with the relatively minor injuries that were sussed out. You conceded that the rib injury was due to your client. You argued that there wasn't undue force because of the shank and so on. But that that injury was due to your client's behavior is conceded on the record, is it not? It is not, your honor. You say that he was sent against the wall and that's what broke his hip, right? There's no definitive evidence or expert testimony that established, for example- You don't need expert testimony for that. Standard tort, I injured him. Quite apart from the fact of whether in this circuit, after Friendly's opinion in Moldavia, if there's a joint group of people and you can't tell who it was, they're all liable. But leave it as so. Fair enough, your honor. Moving on, excessiveness. We contend that the $190,000 award for injuries that didn't require any treatment is excessive and warrants a- Broken ribs don't generally get treatment, right? I mean, there's nothing much you can do for a broken rib except have somebody immobilize himself and wait for it to heal. Isn't that so? There was no testimony about pain medication, no testimony about continuing effects or impacts on his day to day life. But I don't know what the standard treatment, your honor, is for a rib injury. Unless the court has any other questions on those two points, I would move on to my evidentiary point and to my attorney's point. At trial, the defendant attempted to offer the deposition testimony of Lieutenant Jerry Laramie. Who was a watch commander at the time of the incident. About the fact that shanks were all over the place. And the court refused, saying it was cumulative. Now, it was cumulative in two ways. One, McGrath testified to that. And I might see that having somebody else testify to that might be useful and therefore. But Barnaby testified to the same thing. And Barnaby was believed by the jury. So why under the circumstances, if Barnaby had not testified, this might be more interesting. But Barnaby said exactly the same thing that this deposition would have said. So why can we say that the court was beyond its discretion in doing that? Because the court was specifically beyond its discretion because it made a factual error of concluding that it was repetitive. That it was cumulative of prior evidence. There's- You say it wasn't cumulative because the watch commander would have added the point that there was plexiglass missing at the time of the assault because an investigation was being conducted into what happened to it? Yes. Is that a thrust of- That there was a specific ongoing investigation into a lost plexiglass at the facility. And what was the probative of that? What did that add to this case? If you think about, it's either the case that the corrections officer brought, either acquired the shank at some secure place within the facility or brought in the plexiglass shank from outside the facility. There's a fixed, his access is consistent at point A and point B, at time A and time B. Now if there, and that's juxtaposed against the access that the prisoner has to the plexiglass. So if we have Lieutenant Laramie testifying to a specific ongoing investigation and specific missing plexiglass, that has a tendency- But he wasn't linking that investigation to the plaintiff. No, he was not linking it to the plaintiff, but it creates additional means- But does that really add to what Barnaby had already said, that these things were available and therefore the plaintiff could have had it? I mean, I think the jury was told the plaintiff could have had it and chose not to believe your client and to believe the other one. And that's very unusual, but it happened. Lieutenant Laramie is a more, again, he would add imminence to the investigation. And that would have been evidence that would not have been known to McGrath and to Barnaby. Which would give additional credibility to McGrath and Barnaby's testimony that not only were they generally available- There are weapons all over prisons of all sorts and guards frequently have access to homemade weapons that they could have confiscated from another prisoner. And prisoners get access to all kinds of things that they make into weapons. In this prison, there was testimony by both McGrath and Barnaby that plexiglass was one of the things that was floating around in the prison. So, okay, we know that. It could have been something that the prisoner had, or it could have been something that McGrath had and planted. And it's logical if you're going to plant something, that you plant something that's realistic. So, does it still come down to, does the jury believe one person's testimony or the other as to where this particular piece of plexiglass came from? I think that hits exactly on an argument, a point that we're trying to make. When Mr. McGrath testifies to the existence of plexiglass, and when Mr. Barnaby, to a lesser extent, testifies to the existence of plexiglass at the facility. It is as much indicting of them, it's a double edged sword. It's both creating the motive to frame, as well as the access that the prisoner would have. If we were to have an objective third party voice, speak to the same facts and speak with specific eminence about additional facts that- But how would that change the different motive, the motive point that you just made? That it's still the case that this particular piece of plexiglass came from one person or the other person. And Laramie doesn't have anything to say about that. My argument is that the imminent release of that plexiglass made it more probative that it arose from Mr. Tranchina. And we think that if their point had been accepted by the jury, there would have been a cast, the jury could have certainly credited the testimony of Mr. McGrath on every point. This would have added credibility across the board and could have resulted in a reversed outcome on that point. And finally, we make, and if your honors may allow me just 15 seconds. We briefed out the issue of attorney's fees to Mr. Miller. Mr. Miller unfortunately was unable to attend the trial, but if you look at the, due to his parent's health obligations. If you look at the billing as we've laid it out in our brief, this case was already fully staffed and redundantly staffed by Mr. Simon and Mr. Weiss before the trial preparation of Mr. Miller began. There's no basis for the court's inference that the preparation of Mr. Roach was cumulative. Mr. Roach appears to have picked up the case independently and performed admirably at trial without relying on any work product that had been generated by Mr. Miller. Just looking at the billing slips, so we would just simply ask on the final point that the court would reverse the award at least to the extent of the $53,000 awarded to the plaintiff for Mr. Miller's fees. Thank you. Thank you, your honor. Morning, your honors. Edward Sivin for Joseph Cranchina. Council was asked, isn't it undisputed that the rib injuries were caused by the interaction with McGrath, and I believe he said no, it's not undisputed. In fact, it is undisputed. If I can cite from the record, page A-183 of the appendix. McGrath is asked on line 15, question, okay, and what's your explanation for how he sustained the fractured rib? Answer, we both went into the heating register that was behind us. Question, so did he hit, what part of his body hit off of the heating register? Answer, the same as mine, the right side, rib area, you would call it. So McGrath acknowledges that plaintiff suffered an injury to his rib, he just denies the mechanism by which it occurred. With respect to the plexiglass, plaintiff never denied a trial that plexiglass was all over the place. And the undisputed testimony from McGrath and the incarcerated individuals have ready access to plexiglass. And in fact, McGrath testified that this was something that was available at the very time. Bear with me just a moment. So on page A-376, he was asked, line 21, were you aware of plexiglass shanks circulating at the Bear Hill Correctional Facility around the time of January 2016? Answer, yes. Question, how did you become aware of that? Answer, on a daily report, our pre-shift in the morning, any weapons or contraband had been found, so forth and so on. So I don't think that the other witness would have added anything to that particular issue. And finally, with respect to the attorney's fees, I think it's clear that Judge D'Agostino took a rather large scalpel to our attorney's fees. She cut my partner's fees by one-third. She reduced Mr. Roach's fees, my other partner, for the various trial prep by one-half. And she cut all of our travel time within the Northern District. So I think the end result was very fair. Thank you. I've just done a final point on the issue of the cumulativeness of the evidence. The federal rules require that there be a weighing of the probative value against the, the probative value must be substantially outweighed by a danger of needlessly presenting cumulative evidence. This is not a context where there would be some sort of inflammatory or prejudicial inference to be drawn from cumulative evidence. This was a request to simply read in a few paragraphs of a deposition at the trial. You're saying that there would be no prejudice from admitting this. Right. Yeah. And especially the context, it was not a, it was not a, it would have been very simple to just present a few paragraphs of testimony to the, to the trial court. It would not have delayed the trial significantly, and that would just, unless the court has any other further questions, I'll address them in my papers. Thank you. Thank you both, and we'll take the matter under advisement. That's the last case to be argued this morning, so I will ask the deputy to adjourn court. Court is adjourned. Thank you.